**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **STEVEN OWENS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05cv00037 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| **Commissioner of Social Security,** | ) | By: Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Steven Owens, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance."

-1-

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Owens protectively filed his application for DIB on or about December 13, 2002, alleging disability as of September 10, 1999, based on back, neck and kidney problems and hypertension. (Record, ("R."), at 552-55, 577.) The claim was denied initially and upon reconsideration. (R. at 480-82, 486, 487-89.) Owens then requested a hearing before an administrative law judge, ("ALJ"). (R. at 490.) The ALJ held a hearing on February 18, 2004, at which Owens was represented by counsel. (R. at 763-800.)

By decision dated April 30, 2004, the ALJ denied Owens's claim. (R. at 452-59.) The ALJ found that Owens met the disability insured status requirements of the Act for disability purposes through December 31, 1999.[1] (R. at 458.) The ALJ found that Owens had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 458.) The ALJ also found that the medical evidence established that Owens suffered from severe impairments, namely lumbar disc disease and depression, but he found that Owens did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 458.) The ALJ found that Owens's allegations were not totally credible. (R. at 458.) The ALJ found that Owens retained the residual functional capacity to

---

[1] By decision dated September 9, 1999, the ALJ denied a prior claim filed by Owens. (R. at 463-73.) The September 9, 1999, decision was affirmed by this court on September 22, 2003, in case number 2:02cv00065. (Docket Item No. 8.) Therefore, Owens must prove disability between September 10, 1999, and December 31, 1999.

perform light work[2] that did not require exposure to unprotected heights, climbing, kneeling, crouching, stooping and crawling. (R. at 458.) In addition, the ALJ found that Owens was restricted from work that required him to interact with the general public or to manage complex job instructions. (R. at 458.) Thus, the ALJ found that Owens could not perform any of his past relevant work. (R. at 458.) Based on Owens's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Owens could perform jobs existing in significant numbers in the national economy, including those of a ticket taker, a machine operator/tender and an inspector. (R. at 458-59.) Thus, the ALJ found that Owens was not disabled under the Act and was not eligible for DIB benefits. (R. at 459.) *See* 20 C.F.R. § 404.1520(g) (2005).

After the ALJ issued his decision, Owens pursued his administrative appeals, (R. at 448), but the Appeals Council denied his request for review. (R. at 440-44.) Owens then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2005). The case is before this court on Owens's motion for summary judgment filed September 1, 2005, and the Commissioner's motion for summary judgment filed October 4, 2005.

## *II. Facts*

Owens was born in 1963, (R. at 553), which classifies him as a "younger

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2005).

-3-

person" under 20 C.F.R. § 404.1563(c). Owens has a high school education, which included special education classes, and past relevant work experience as a coal miner. (R. at 112, 206.)

Marshall Tessnear, Ph.D., a psychological expert, testified at Owens's 2004 hearing. (R. at 784-90.) Tessnear stated that, although the June 2000 report of Dr. David L. Forester, M.D., a psychiatrist, indicated that Owens reported some worsening of his depression, the report was basically similar to Dr. Forester's 1995 report. (R. at 785.) Tessnear stated that it was his opinion that the limitations found by administrative law judge Kennedy in September 1999 would reasonably extend through December 31, 1999. (R. at 786-87.) He stated that the medical evidence did not show that Owens experienced worsened limitations. (R. at 787.)

In rendering his decision, the ALJ reviewed reports from Dr. David L. Forester, M.D., a psychiatrist; Robert C. Miller, Ed.D., a licensed clinical psychologist; Dr. John A. Jane Sr., M.D.; University of Virginia; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Arthur Amador, M.D.; Buchanan County Rural Family Practice Center, Inc.; Dr. Jackie R. Briggs, D.O.; Dr. Felix E. Shepard Jr., M.D.; and Cumberland Mountain Community Services. Owens's attorney also submitted medical records from Appalachian Urology; Susan Coleman, L.C.S.W.; and Buchanan County Family Practice to the Appeals Council.[3]

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 440-44), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-4-

Some medical findings that are of relevance are assessments from Dr. Ira Wile, M.D., Elisabeth Gillmore, Ph.D., and Barry Friedman, Ph.D. In May 1996, Friedman found that Owens functioned intellectually in the low average range, had a personality disorder, not otherwise specified, and could perform routine repetitive tasks. (R. at 321.) Friedman determined that Owens had an unlimited ability to function independently, to maintain attention and concentration, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 323.) Owens had a limited, but satisfactory, ability to understand, remember and carry out complex job instructions and a more than satisfactory ability in all other areas. (R. at 323.) In May 1999, Dr. Wile found that Owens could occasionally lift and carry items weighing up to 25 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 420.) Owens could sit, stand or walk for six hours each at two-hour intervals during an eight-hour workday, occasionally balance and never climb, stoop, kneel, crouch or crawl. (R. at 420-21.) Additionally, he stated that Owens should avoid heights. (R. at 422.) That same day, Gillmore found that Owens had a more than satisfactory ability to follow work rules, to interact with supervisors, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 423-24.) Owens had a limited, but satisfactory, ability to relate to co-workers, to use judgment, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed job instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 423-24.) Additionally, Owens had a seriously limited, but not precluded, ability to deal with the public and to understand, remember and carry out complex job instructions. (R. at 423-24.)

On May 10, 1999, Dr. R. Kubota, M.D., reported that x-rays showed only mild spondylosis in the cervical spine and mild bony spurring and disc space narrowing of the lumbar spine. (R. at 419.)

On January 15, 2003, Dr. John A. Jane Sr., M.D., examined Owens for right arm pain.(R. at 652.) Examination was basically normal and conservative treatment was recommended. (R. at 652.)

On January 16, 2003, Owens was seen at the University of Virginia for evaluation of a right scrotal mass. (R. at 649-51.) Owens reported that he had the mass for two to three years. (R. at 649.) He was diagnosed with a right spermatocele and surgery was not recommended. (R. at 651.)

On March 6, 2003, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Owens had the residual functional capacity to perform light work. (R. at 617-25.) He indicated that Owens's ability to push and/or pull was limited in his lower extremities. (R. at 619.) Dr. Johnson indicated that Owens could frequently climb and balance and occasionally stoop, kneel, crouch and crawl. (R. at 621.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 621-23.)

On May 20, 2003, Dr. Arthur Amador, M.D., evaluated Owens at the request of Owens's attorney. (R. at 626-28.) Dr. Amador diagnosed major depressive disorder, single episode without psychotic features and a pain disorder associated with both psychological factors and a general medical condition. (R. at 627.) Dr. Amador

completed a mental assessment indicating that Owens had a seriously limited to no useful ability to make occupational, performance and personal-social adjustments. (R. at 629-31.)

The record shows that Owens sought treatment from Buchanan County Rural Family Practice Center, Inc., from March 2003 through August 2004 for neck and back pain, anxiety and hypertension. (R. at 635-45, 657-58, 671, 727-50.)

By letter dated November 11, 2003, Dr. Jackie R. Briggs, D.O., indicated that he had treated Owens for multiple medical problems which included spondylotic disc bulging at C5-6 and C6-7 with bilateral foraminal stenosis at C5-6. (R. at 648.) Dr. Briggs reported that Owens had bulging annulus at the L3-L4 through L5-S1 levels. (R. at 648.) He indicated that Owens suffered from hypertension and depression. (R. at 648.) Dr. Briggs reported that all of Owens's problems were controlled with medication. (R. at 648.) Dr. Briggs further reported that Owens had increased pain with activity and that he was unable to tolerate noise and crowds. (R. at 648.) He reported that Owens was unable to engage in any gainful employment. (R. at 648.)

The record shows that Owens was treated by Dr. Felix E. Shepard Jr., M.D., for complaints of right testicular pain from November 2003 through January 2004. (R. at 660-70, 696-704.) He was diagnosed with right epididymal cystic mass, microscopic hematuria and obstructive and irritative voiding symptoms. (R. at 660.) Owens underwent a cystoscopy and excision of right epididymal cyst on January 29, 2004. (R. at 707-10.) On February 11, 2004, Dr. Shepard reported that Owens was doing well. (R. at 711.) On February 16, 2004, Owens complained of scrotal pain. (R. at

713.) He was diagnosed with possible inflammation or infection. (R. at 713.) A scrotal ultrasound showed an enlarged inhomogeneous epididymis. (R. at 715.) He showed improvement on February 24, 2004. (R. at 716.)

Owens sought treatment from Cumberland Mountain Community Services from January 2004 through May 2004 for complaints of depression. (R. at 659, 684-94, 717-26.) On August 19, 2004, Susan Coleman, L.C.S.W., completed a mental assessment indicating that Owens was limited, but satisfactory, in his ability to function independently and to understand, remember and carry out simple job instructions. (R. at 755-56.) She indicated that Owens was seriously limited, but not precluded, in his ability to follow work rules, to interact with supervisors, to understand, remember and carry out detailed instructions, to maintain personal appearance and to demonstrate reliability. (R. at 755-56.) She indicated that Owens had a seriously limited to no useful ability to deal with work stresses, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 755-56.) Coleman reported that Owens had no useful ability to relate to co-workers, to deal with the public, to use judgment, to maintain attention/concentration and to understand, remember and carry out complex instructions. (R. at 755-56.)

On March 3, 2004, Robert C. Miller, Ed.D., a licensed clinical psychologist, evaluated Owens at the request of Owens's attorney. (R. at 674-79.) Miller diagnosed major depressive disorder, severe, without psychotic features, a learning disorder, not otherwise specified, and mild mental retardation. (R. at 678.) Miller found that Owens had a limited, but satisfactory, ability to maintain personal appearance. (R. at 680-81.) He found that Owens had no useful ability to perform the remaining occupational,

performance and personal-social adjustments. (R. at 680-81.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003 & Supp. 2005); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 30, 2004, the ALJ denied Owens's claim. (R. at 452-

59.) The ALJ found that the medical evidence established that Owens suffered from severe impairments, namely lumbar disc disease and depression, but he found that Owens did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 458.) The ALJ found that Owens retained the residual functional capacity to perform light work that did not require exposure to unprotected heights, climbing, kneeling, crouching, stooping and crawling. (R. at 458.) In addition, the ALJ found that Owens was restricted from work that required him to interact with the general public or to manage complex job instructions. (R. at 458.) Thus, the ALJ found that Owens could not perform any of his past relevant work. (R. at 458.) Based on Owens's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Owens could perform jobs existing in significant numbers in the national economy, including those of a ticket taker, a machine operator/tender and an inspector. (R. at 458-59.) Thus, the ALJ found that Owens was not disabled under the Act and was not eligible for DIB benefits. (R. at 459.) *See* 20 C.F.R. § 404.1520(g) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless*

*Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Owens argues that the ALJ's decision is not supported by substantial evidence of record. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 12-15.) Owens argues that the ALJ erred by failing to consider the combined effect of all his impairments in finding him not disabled. (Plaintiff's Brief at 13-15.) In particular, Owens argues that Dr. Forester's report shows that his mental status was worse than in 1995. (Plaintiff's Brief at 13-15.)

Owens argues that the ALJ erred by failing to consider the combined effect of his impairments during the relevant time period. (Plaintiff's Brief at 13-15.) Based upon my review of the ALJ's decision, I find that the ALJ properly considered Owens's impairments in combination. He discussed each impairment separately and found that Owens's impairments did not prevent him from performing work existing in significant numbers in the national economy. (R. at 454-56, 458-59.) Owens further argues that Dr. Forester's report shows that his mental status was worse in June 2000

-11-

than in 1995. (Plaintiff's Brief at 13-15.) The psychological expert testified that Dr. Forester's report from 1995, which this court found unpersuasive, is basically not that different from the 2000 report. (R. at 785.) A vocational expert testified that, considering the limitations set out by Dr. Forester in 2000, Owens still could perform work existing in significant numbers in the economy. (R. at 792-93.) Furthermore, there is no indication in Dr. Forester's report to specifically relate his opinion back to the time period in question, prior to December 1999. In addition, the psychological evidence from psychologists Pantaze, Friedman and Gillmore establishes that Owens did not meet the listed impairments for depression or anxiety. (R. at 149, 294-302, 315-23.)

The relevant evidence shows that in May 1999, Owens had only mild spurring in his spine. (R. at 419.) The evidence also shows that Owens had intact strength and nerves, normal straight leg raising and range of motion, no spasm and diagnoses of mild spondylosis and disc narrowing. (R. at 219, 252.) The record shows that Owens could perform light work, and Owens's treating physicians, Dr. Matthew W. Wood Jr., and Dr. William A. McIlwain, found that Owens could perform almost all activities. (R. at 220, 252.) Their assessments were supported by a videotape of Owens bending, twisting and carrying large pieces of sheet rock and five gallon buckets full of liquid. (R. at 220.)

For these reasons, I find that substantial evidence exists to support the ALJ's finding that Owens had the residual functional capacity to perform a limited range of light work. I also find that substantial evidence exists in the record to support the ALJ's finding that Owens was not disabled during the time period September 10,

1999, through December 31, 1999.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence supports the ALJ's finding with regard to Owens's residual functional capacity; and

2. Substantial evidence exists to support the ALJ's finding that Owens was not disabled under the Act prior to December 31, 1999.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Owen's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file

written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 4th day of November 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE